IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
The Honorable Michael E. Romero

| | |
|---|---|
| In re: ) | |
| ) | Case No. 12-27817 MER |
| JEFFREY DREW LAVENHAR ) | |
| ) | Chapter 7 |
| Debtor. ) | |
| ) | |
| FIRST AMERICAN TITLE ) | Adversary No. 12-1711 MER |
| INSURANCE COMPANY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| JEFFREY DREW LAVENHAR ) | Signed/Docketed |
| ) | August 7, 2013 |
| Defendant. ) | |

**ORDER**

THIS MATTER comes before the Court on the Plaintiff's Motion for Partial Summary Judgment Denying Dischargeability of the Fraud Judgment Debt Pursuant to 11 U.S.C. Sections 523(a)(2)(A) and 523(a)(6) (the "Summary Judgment Motion") and the Plaintiff's Motion to Bifurcate and Stay Plaintiff's Second, Third, Fourth, and Sixth Claims for Relief for Nondischargeability of Debtor's Debt Pending Resolution of Plaintiff's Civil Theft Claim in State Court (the "Bifurcation Motion") filed by Plaintiff First American Title Insurance Company ("First American"), and the responses to the Motions filed by Debtor-Defendant Jeffrey Drew Lavenhar ("Lavenhar").

**JURISDICTION**

The Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) and (b) and 157(a) and (b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I), because it involves the dischargeability of a debt.

**BACKGROUND**

First American holds a judgment against Lavenhar in the amount of $434,913.39, plus interest, fees and costs (the "Judgment"), issued January 3, 2011, by the Arapahoe County District Court (the "State Court") in Case No.

2007 CV 1040 (the "State Court Action").[1]  Lavenhar filed his voluntary Chapter 7 petition on August 25, 2012.  On November 13, 2012, First American filed the above-captioned adversary proceeding against Lavenhar.  Prior to the filing of an Answer, First American filed the Summary Judgment Motion.  Shortly after Lavenhar filed his Answer, First American filed the Bifurcation Motion.

First American's Complaint alleges Lavenhar filed his Chapter 7 petition to avoid collection of First American's judgment and states Lavenhar owes two nondischargeable debts: 1) a debt based on the Judgment; and 2) a debt in an undetermined amount based on First American's claim for treble damages, costs and attorneys' fees under the Colorado Theft Statute, COLO. REV. STAT. § 18-4-405.

According to the Complaint, First American's claims against Lavenhar arose from a Denver real estate condominium development project involving Lavenhar and his limited liability company, Mile High Investors, LLC ("Mile High").  Lavenhar and Mile High loaned the developer, Len Goldberg ("Goldberg"), funds for the construction of the project, and took a third position against the real property as collateral.  Lavenhar and Mile High subsequently restructured the loan and transferred their collateral interest to certain properties belonging to Goldberg in Florida.  The Denver condominium units sold, with First American underwriting title policies issued by Security Title Guaranty Company ("Security Title"), but Lavenhar and Mile High refused to release their deeds of trust.

The Complaint also asserts Goldberg made payments to Lavenhar and Mile High intended as payment of their notes, but which Lavenhar and Mile High used for other purposes.  In the meantime, First American made payments on Lavenhar's and Mile High's notes to protect its interests and those of Security Title.  First American was never informed of the payments Lavenhar and Mile High had received from Goldberg, nor of the transfer of their security interest to properties in Florida.  Thereafter, Security Title and First American commenced the State Court Action.

First American's claim for treble damages was still pending in the State Court Action at the time this adversary proceeding was filed.  On November 23, 2012, First American filed a motion for relief from stay to proceed with the State

---

[1] In addition, on January 19, 2011, First American initiated another action against Lavenhar, Lavenhar's ex-wife Laurie Lavenhar ("Laurie") and the Laurie H. Lavenhar Living Trust (the "Lavenhar Trust") in the Elbert County District Court (the "Elbert Action").  The Elbert Action concerns an alleged fraudulent conveyance claim against Lavenhar, Laurie and the Lavenhar Trust.  The Chapter 7 Trustee has since been substituted as the plaintiff in that action.

Court Action to continue litigation regarding the alleged civil theft claim. No responses to First American's first Motion for Relief from Stay were filed, and on December 18, 2012, the Court entered an order lifting the stay for First American to proceed with the State Court Action, but also stating "[First American] may not execute on the judgment if any, without further order of this Court."[2] On May 6, 2013, First American filed a notice of the Arapahoe District Court's entry of judgment in its favor on May 5, 2013.[3]

First American's Complaint contains the following six claims for relief: 1) nondischargeability of the Judgment, pursuant to 11 U.S.C. § 523(a)(2)(A);[4] 2) nondischargeability of First American's claim for treble damages, costs and attorneys' fees pursuant to § 523(a)(2)(A); 3) nondischargeability of the Judgment pursuant to § 523(a)(4); 4) nondischargeability of First American's claim for treble damages, costs and attorneys' fees pursuant to § 523(a)(4); 5) nondischargeability of the Judgment pursuant to § 523(a)(6); and 6) nondischargeability of First American's claim for treble damages, costs and attorneys' fees pursuant to § 523(a)(6).

Lavenhar's Answer asserts the following responses, all labeled as "defenses": 1) failure to state a claim; 2) failure to mitigate damages, as Lavenhar obtained a judgment against Goldberg which First American could have used to satisfy its debt but failed to do so; 3) First American acted to its detriment without justifiable reliance; 4) Lavenhar lacked the intent to defraud but rather acted on the advice of counsel and other experts; 5) Lavenhar acted without the knowledge or intent he would cause harm to First American; 6) waiver and estoppel; 7) failure to mitigate damages; 8) admission and denial of specific allegations in the Complaint.

### A.  The Summary Judgment Motion

According to the Summary Judgment Motion, the State Court found Lavenhar and Mile High were obligated to release Mile High's liens on the Denver properties at the time of sale. The State Court also found Lavenhar and Mile High fraudulently misrepresented or concealed material facts by failing to disclose the new agreement with Goldberg under which 1) Lavenhar would

---

[2] *See* Docket Nos. 30 and 42 in the underlying bankruptcy case. First American filed three other motions for relief from stay, at Docket Nos. 37, 43, and 99. The Court denied two of these motions and granted the third.

[3] *See* Bankruptcy Case Docket No. 127, Adversary Proceeding Docket No. 23, Exhibit 1, Findings and Order of Judgment of the Arapahoe County District Court.

[4] Unless otherwise noted, all future statutory references in the text are to Title 11 of the United States Code.

participate in business opportunities being pursued by Goldberg and his related entities in Florida; 2) several outstanding loans including the Mile High Loan would be consolidated and modified; 3) Lavenhar would be assigned a security interest in Goldberg's interest in PW Florida Acquisitions, LLC which would replace the Denver properties as collateral for the Mile High Loan as well as secure the repayment of other loans; and 4) the term of the Mile High Loan would be extended and its interest rate reduced.[5]

Moreover, the State Court determined Mile High was the alter ego of Lavenhar, making Lavenhar liable for Mile High's debts. In addition, the State Court found Lavenhar had a duty to inform Security Title and First American of any changes in the loan to Goldberg. The court further found Lavenhar knew his representations were false or incomplete, and were made with the intent of defrauding First American into paying funds to which neither he nor Mile High was entitled, in order to obtain the releases which Mile High and Lavenhar were already obligated to provide. The State Court awarded damages to First American of $434,913.09. Based on these findings, First American contends it is entitled to summary judgment in this proceeding on its First and Fifth Claims for Relief, under the doctrine of collateral estoppel and 28 U.S.C. § 1738, which codifies the Full Faith and Credit Clause of the Constitution, Art. IV, § 1 (the "Full Faith and Credit Clause").

Lavenhar's Response to the Summary Judgment Motion first alleges the Summary Judgment Motion is procedurally inadequate. It then argues the Motion should be denied because neither the State Court nor the Colorado Court of Appeals made any findings of willfulness or maliciousness. Lavenhar points out he has raised the issue of lack of intent as a defense, arguing this results in a contested material fact. In addition, Lavenhar contends First American has not shown which portion of the damages it asserts are based on willful and malicious acts.

B.   **The Bifurcation Motion**

This Motion seeks to bifurcate First American's Second, Third, Fourth, and Sixth Claims for Relief from the remaining claims, and to stay litigation of those claims pending resolution by the state court of First American's pending civil theft claim. First American asserts the Second, Third, Fourth, and Sixth Claims arise from allegations of civil theft under COLO. REV. STAT. § 18-4-405, and seek a finding damages from such civil theft are nondischargeable under §§ 523(a)(2)(A), (a)(4), and (a)(6). Those claims have been proceeding in state court following this Court's December 18, 2012 order granting of relief from stay. First American believes if it is successful in state court, this Court

---

[5] Summary Judgment Motion, ¶ 18.

would find the debt nondischargeable on principles of collateral estoppel and there would be no need for further proceedings.

Lavenhar's Response contends First American improperly seeks to expand upon its grant of relief from stay. He argues the Second, Fourth, and Sixth claims are redundant, as they simply restate the First, Third, and Fifth claims and add a request for treble damages based on the Colorado Theft Statute. Lavenhar points out dischargeability under §§ 523(a)(2), (4), and (6) is solely a bankruptcy court matter, and argues the Third claim, under § 523(a)(4), is the only claim which should be stayed pending the State Court Action.

## DISCUSSION

As a preliminary matter, the Court notes Lavenhar identifies several procedural deficiencies in the Summary Judgment Motion. However, the Court finds the deficiencies have not prejudiced the parties because they were provided an opportunity to present affidavits in support of their respective positions, which the Court may considered to evaluate the Summary Judgment Motion. In any event, the procedural deficiencies did not hinder the Court's understanding of the assertions set forth in the Summary Judgment Motion. Moreover, denying the Summary Judgment Motion on procedural grounds would conflict with the Tenth Circuit's preference for determination of matters on their merits.[6]

### A.  Summary Judgment Motion

First American seeks summary judgment as to the First and Fifth claims for relief. Those claims request a finding First American's debt is nondischargeable pursuant to §§ 523(a)(2)(A) and 523(a)(6).

### 1.  *Summary Judgment Standards*

Summary judgment shall be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a

---

[6] *See Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir.1970) ("The preferred disposition of any case is upon its merits. . . ."); *Gatrell v. City and County of Denver*, 2012 WL 219434, *1 (D. Colo. January 23, 2012) (not reported in F. Supp. 2d) (noting the judicial system's strong preference for resolving cases on their merits). *See also Financial Federal Credit, Inc. v. Walter B. Scott & Sons, Inc. (In re Walter B. Scott & Sons, Inc.)*, 436 B.R. 582, 587 (Bankr. D. Idaho 2010) ( a bankruptcy court has discretion to excuse strict compliance with local rules).

matter of law."[7]  The burden for establishing entitlement to summary judgment rests on the movant.[8]   Summary judgment is not appropriate where a dispute exists as to facts which could affect the outcome of the suit under relevant law.[9]  A genuine dispute over a material fact exists when the "evidence supporting the claimed factual dispute [is] shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."[10]  In reviewing motions for summary judgment, the Court must view the record in the light most favorable to the non-moving party.[11]  As noted by Chief Judge Howard R. Tallman of this Court:

> This Court exercises great circumspection in the granting of a motion for summary judgment.  There should always be a natural preference for allowing the parties to proceed to a trial on the merits where there is any factual matter subject to a *bona fide* dispute which bears on the ultimate resolution of the controversy.  *Associated Press v. U.S.*, 326 U.S. 1, 6, 65 S.Ct. 1416, 1418, 89 L.Ed. 2013 (1945) ("Rule 56 should be cautiously invoked to the end that parties may always be afforded a trial where there is a *bona fide* dispute of facts between them").  "Where it appears however that there is no genuine issue as to any material fact upon which the outcome of the litigation turns, the case is appropriate for disposition by summary judgment and it becomes the duty of the court to enter such judgment."  *Whelan v. New Mexico Western Oil and Gas Company*, 226 F.2d 156, 159 (10th Cir. 1955).[12]

> 2.  *Summary Judgment is Not Warranted Regarding First American's Fifth Claim for Relief.*

With respect to First American's Fifth Claim for Relief, the Court notes the Tenth Circuit Bankruptcy Appellate Panel has stated the following regarding § 523(a)(6):

---

[7] FED. R. CIV. P. 56, (as incorporated by FED. R. BANKR. P. 7056);  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 322 (1986).

[8] *Celotex*, 477 U.S. at 323.

[9]  *Carey v. U.S. Postal Service,* 812 F.2d 621, 623 (10th Cir. 1987).

[10]  *Anderson v. Liberty Lobby*,  477 U.S. 242, 249 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-289 (1968) (internal quotation marks omitted).

[11]  *Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 613 (10th Cir. 1988).

[12]  *National Labor Relations Board v. Gordon (In re Gordon)*, 303 B.R. 645, 650 (Bankr. D. Colo. 2003).

> Section 523(a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." To state a claim for relief under § 523(a)(6), the creditor must include allegations that would support a reasonable inference that the debtor caused a deliberate or intentional injury to the creditor. Debts resulting from recklessness or negligence do not fall within § 523(a)(6).
>
> . . .
>
> [A]s the Supreme Court made clear in *Kawaauhau v. Geiger*, an intent to cause injury is required to bring a debt within § 523(a)(6). Since a person can convert property without intending to injure the interests others may have in the property, a creditor must include allegations suggesting the debtor committed the conversion with the intent to injure to adequately state a claim for relief under § 523(a)(6).[13]

Specifically, the Supreme Court found for a debt to be nondischargeable under § 523(a)(6), a plaintiff must prove, "a deliberate or intentional <u>injury</u>, not merely a deliberate or intentional <u>act</u> that leads to injury."[14]

Here, the findings of the State Court may support the willfulness prong of § 523(a)(6), but there is nothing in the record before the Court to address whether the acts or omissions of Lavenhar constituted "willful <u>and</u> malicious" injury. Therefore, the Summary Judgment Motion cannot be granted as to First American's Fifth Claim for Relief.

> 3.   *Collateral Estoppel Applies to First American's Claims Under § 523(a)(2), Making Summary Judgment Appropriate.*

Under applicable Colorado law, collateral estoppel applies only if four conditions have been satisfied: 1) the issue sought to be precluded is identical to an issue actually and necessarily determined in a prior proceeding; 2) the party against whom estoppel is asserted was a party to or is in privity with a party to the prior proceeding; 3) there was a final judgment on the merits in the prior proceeding; and 4) the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding.[15] The

---

[13] *Barenberg v Burton (In re Burton)*, 463 B.R. 142, *6 (10th Cir. BAP, Aug. 31, 2010) (unpublished decision) (citing *Kawaauhau v. Geiger*, 523 U.S. 57 (1998)).

[14] *Kawaauhau*, 523 U.S. at 61-62 (emphasis added).

[15] *In re Tonko*, 154 P.3d 397, 405 (Colo. 2007); *see also Bebo Constr. Co. v. Mattox & O'Brien, P.C.*, 990 P.2d 78, 84-85 (Colo. 1999); *Michaelson v. Michaelson*, 884 P.2d 695, 700-701 (Colo. 1994).

burden of establishing these elements rests on the party asserting collateral estoppel.[16] For the reasons stated below, the Court finds the doctrine of collateral estoppel applies, and prevents Lavenhar from disputing the elements of § 523(a)(2)(A), which makes summary judgment appropriate on First American's First Claim for Relief.

Specifically, there is no dispute the second, third, and fourth elements of collateral estoppel have been established. Lavenhar and Mile High were parties to the State Court Action and participated in a trial on the merits. In addition, a final judgment has entered in the fraud portion of the State Court Action, and the Judgment was affirmed on appeal.

With respect to the identity of issues, the Court notes § 523(a)(2)(A) provides a discharge under § 727 does not discharge an individual debtor from a debt—

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
>
>> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.[17]

First American must establish its claim is subject to this exception by proving the following: 1) Lavenhar made a false representation; 2) with the intent to deceive First American; 3) First American relied on the false representation; 4) First American's reliance was justifiable; and 5) the false representation resulted in damages to First American.[18] These elements must be proved by a preponderance of the evidence.[19]

In addressing the issue of fraud, the State Court found:

> There is no question that Mr. Lavenhar told Security Title and First American that the Mile High Note was in default. For the reasons stated above, that statement was a material fact, it was false, and the fact that the loan modification had cured the default had been

---

[16] *Bebo Constr.*, 990 P.2d at 85.

[17] § 523(a)(2)(A).

[18] *Field v. Mans*, 516 U.S. 59, 71 (1995); *Fowler Brothers v. Young (In re Young)*, 91 F.3d 1367, 1373 (10th Cir. 1996).

[19] *Grogan v. Garner*, 498 U.S. 279, 287 (1991).

concealed. Further, under the circumstances Mr. Lavenhar had a duty to disclose these facts. Neither Security Title nor First American knew the Mile High Note had been modified and justifiably relied up [sic] Mr. Lavenhar's representation is [sic] was in default. . . .

The Court finds that Mr. Lavenhar attempted to fashion an argument that would support a claim that the Mile High Loan had not been modified and was in default in order to obtain a payoff from First American. However, he knew that he had entered into several agreements which effected [sic] the repayment terms and conditioned [sic] for the loan and which materially affected whether the Mile High Note was in default and thus whether there was an obligation to release all six Units from the Deed of Trust. . . . His was an act of intentional omission rather than commission.

Mr. Lavenhar's purpose in submitting claims, demanding payment, and not allowing a reasonable period of time for investigation was to recover funds from First American and Security Title under the title insurance policies.

The Court finds that the Mr. Lavenhar made the misrepresentations and failed to disclose the material facts with the intent of defrauding First American into paying funds to which neither he nor Mile High was entitled, in order to obtain the Release of Deed of Trust Mile High was obligated to give.[20]

In addition, after extensive analysis of the trial evidence, the Court held Mile High was an alter ego of Lavenhar, making Lavenhar personally liable for debts of Mile High:

[T]he Court finds that the preponderance of the credible evidence compels a finding that Mile High is an alter ego of Mr. Lavenhar. Mr. Lavenhar is thus liable for the misrepresentations, omissions and obligations of Mile High.[21]

Thus, the State Court concluded Mile High, and hence Lavenhar, owed a debt based on fraud to First American:

There is no dispute that First American suffered a loss in the amount of $434,913.09, the amount paid to the First American. Mile High was

---

[20] Summary Judgment Motion, Exhibit 1, at p. 15-19.

[21] *Id.* at p. 20.

legally obligated to release the Mile High Deed of Trust in October, 2004, without receipt of any payment from First American.[22]

Accordingly, the State Court found: 1) Lavenhar made false representations or omissions with respect to whether the note was in default and with respect to the transfer of the security interest to the Florida properties; 2) Lavenhar made the misrepresentations or omissions "with the intent of defrauding First American into paying funds to which neither he nor Mile High was entitled;" 3) First American relied on the false representations or omissions, believing the note was in default and payments were required to obtain the release of the liens on the Denver property; 4) First American's reliance was justifiable; and 5) the false representation resulted in First American's loss of $434,913.09.

The findings in the State Court Action with respect to state law fraud fulfill the requirements for a finding of nondischargeability under § 523(a)(2)(A), and meet the requirement of identity of issues for purposes of collateral estoppel. Therefore, First American is entitled to summary judgment on its First Claim for Relief.

Lavenhar's assertion First American failed to mitigate damages does not change this finding. If First American failed to pursue Lavenhar's judgment against Goldberg, and if such failure constitutes a failure to mitigate damages, an issue remains as to the amount of damages, not as to whether damages exist. Those matters may be addressed at trial, if necessary.

## B. Bifurcation Motion

The Court agrees with Lavenhar that the Second, Third, Fourth and Sixth Claims for Relief should not be separated from First American's other claims. Bifurcating the claims would unnecessarily complicate an already complicated case, and would not result in judicial economy. In addition, in light of the judgment entered in the State Court Action on May 5, 2013, the Bifurcation Motion appears to be moot. For these reasons, the Court will deny the Bifurcation Motion.

## CONCLUSION

Based upon the above findings and conclusions,

---

[22] *Id.*

IT IS ORDERED the Summary Judgment Motion is GRANTED with respect to the First Claim for Relief and Lavenhar's debt to First American is nondischargeable under § 523(a)(2)(A).

IT IS FURTHER ORDERED the Summary Judgment Motion is DENIED with respect to the Fifth Claim for Relief under § 523(a)(6).

IT IS FURTHER ORDERED the Plaintiff's Motion to Bifurcate and Stay Plaintiff's Second, Third, Fourth, and Sixth Claims for Relief for Nondischargeability of Debtor's Debt Pending Resolution of Plaintiff's Civil Theft Claim in State Court is DENIED as moot.

Dated August 7, 2013                BY THE COURT:

Michael E. Romero
United States Bankruptcy Judge